**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **FCX SOLAR, LLC,** | |
| **Plaintiff,** | |
| | |
| ***v.*** | **6:21-cv-548-ADA** |
| | |
| **FTC SOLAR, INC.,** | |
| **Defendant.** | |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT FTC SOLAR, INC.'S
OPPOSED MOTION TO TRANSFER [ECF No. 13]**

Came on for consideration this date is Defendant FTC Solar, Inc.'s Motion to Transfer (the

"Motion"), filed July 22, 2021. ECF No. 13. Plaintiff FCX Solar, LLC ("FCX") filed a response

on August 5, 2021, ECF No. 21, to which Defendant FTC Solar, Inc. ("FTC") replied on August

12, 2021, ECF No. 23. After careful consideration of the Motion, the Parties' briefs, and the

applicable law, the Court **GRANTS** Defendant FTC Solar, Inc.'s Motion to Transfer.

## I. BACKGROUND

### A.    The Parties and Technology

FTC is a provider of solar tracker systems that is headquartered in Austin, Texas. First

Amended Complaint ("FAC"), ECF No. 18 ¶¶ 2, 7. FCX is an engineering consultancy that has

developed and designed solar structures for FTC and others. *See id.* ¶ 1. A solar tracker system

"allows a photovoltaic cell to track the movement of the sun through the sky over the course of a

day, increasing efficiency and output of a solar array." *Id.* ¶ 2. Environmental factors, however,

such as wind or snow can twist a row of photovoltaic modules from its intended tilt angle,

decreasing the amount of energy it produces. ECF No. 1-1 at 1:29–39. FCX has claimed

inventions, including the patent-in-suit, that relate to a damper device that "resist[s] movement of

1

the [photovoltaic] modules relative to the base . . . [to] mitigate dynamic wind loading or other vibrational loads." *Id.* at 2:56–60.

### B.    The Parties' License Agreement

On May 13, 2019, FCX and FTC entered into a license agreement, ECF No. 13-3 (the "License Agreement"), that granted FTC a royalty-bearing license to make, sell, and use "Products" that incorporate inventions claimed in certain of FCX's patents and patent applications. Specifically, the License Agreement allowed FTC "to make and have made Products . . . to sell, offer for sale, export or import Products that are incorporated into Solar Trackers . . . and [] use the Products that are incorporated into Solar Trackers and to authorize Affiliates to use such therefore." ECF No. 13-3 at Section 2.1. "Product," is defined as "any product . . . [that] would (without the license granted hereunder) infringe directly, indirectly by inducement of infringement, or indirectly by contributory infringement, at least one issued Valid Claim or any pending Patent claim that would be hypothetically infringed . . . ." *Id.* at Section 1.8. A "Valid Claim" is defined as "an issued and unexpired Patent that has not been abandoned, revoked, or held unenforceable or invalid" or "a claim in any pending application for a Patent that was filed in good faith and has not been cancelled, withdrawn, abandoned, or finally disallowed . . . ." *Id.* at Section 1.13. "Solar Tracker" is defined as a tracker "incorporating the Product that uses a single-axis for orienting Solar Panels." *Id.* at Section 1.12.

Section 1.5 of the License Agreement defines "Patent(s)" as:

> the patent applications set forth on Exhibit A [US Patent Application Serial No. 16/274,557], as well as any patents or other registrations issuing therefrom and any continuation, divisional, reissue, renewal, or extension, in whole or in part, of any such applications or registration and any international counterparts.

*Id.* at Section 1.5.

In the License Agreement, the parties agreed that New York law would govern disputes between the parties and consented to "the exclusive jurisdiction and venue of a competent court sitting in the state of New York, for the adjudication of all matters arising from the subject matter of this Agreement." *Id.* at Section 11.5. By its terms, the License Agreement applies to U.S. Patent Application Serial No. 16/274,557 (the "'557 Application"), its "continuation[s]," and other patents within the same family. *Id.* at Section 1.5. The patent asserted in this Action, U.S. Patent No. 10,903,782 (the "'782 Patent") is a continuation of the '557 Application. ECF No. 1-1.

### C.    FCX filed suit in the Southern District of New York asserting claims arising from the subject matter of the License Agreement.

On April 21, 2021, FCX filed an action against FTC in the United States District Court for the Southern District of New York ("SDNY"), alleging breach of the License Agreement, fraud, and unjust enrichment. *See FCX Solar, LLC v. FTC Solar, Inc.*, 1:21-cv-03556-RA, ECF No. 1 (S.D.N.Y. Apr. 21, 2021) (the "New York Action"). FCX amended its initial complaint on July 16, 2021. *See FCX Solar, LLC v. FTC Solar, Inc.*, 1:21-cv-03556-RA, ECF No. 16 (S.D.N.Y. July 16, 2021) (the "New York Complaint"). FCX's breach of contract claim in that suit is premised on FTC's alleged failure to pay royalties for its alleged use of products "covered by [the] claims" in the License Agreement. ECF No. 13-5 ¶ 84. Between May 2019 and June 2020, FTC paid Plaintiff more than $1.4 million in royalties on the sale of solar trackers that incorporated Products. ECF No. 13-5 ¶ 10. But since July 2020, FTC has failed to pay royalties under the License Agreement. *Id.* ¶ 11. FTC now contends that its prior payments to Plaintiff under the License Agreement were made in error, and that its solar trackers were never subject to the License Agreement.

FCX affirmed in the New York Complaint that it was bound by the License Agreement forum selection clause, affirmatively alleging that FTC was "subject to personal jurisdiction in the

State of New York by consent" through the License Agreement and that "[v]enue is proper in" the Southern District of New York under the License Agreement. *Id.* ¶¶ 20–21. Section 10.5(d) of the License Agreement provides that Section 11 would "survive any termination or expiration . . . ." ECF No. 13-3 at Section 10.5(d).

On April 30, 2021, after FCX initiated the SDNY action, FTC provided FCX with 30 days' written notice that it was exercising its right to terminate the License Agreement in accordance with Section 10.3. ECF No. 18 ¶ 21; ECF No. 13-3 at Section 10.3. According to FCX, it initiated this action "six minutes after the License Agreement terminated, at 11:06 p.m. Central time on May 29 (May 30, 12:10 a.m. Eastern time)." ECF No. 21 at 3. The FAC recites that FCX is only seeking damages arising after FTC's termination of the License Agreement. *See* ECF No. 18 ¶¶ 68, 77, 85.

On July 22, 2021, FTC filed this Motion, seeking to transfer this action under 28 U.S.C. § 1404(a) to New York pursuant to the forum-selection clause in the License Agreement and/or the first-filed rule. ECF No. 13.

## II. LEGAL STANDARD

### A.    Forum Selection Clauses

When determining whether to transfer a case to another district court pursuant to a forum-selection clause ("FSC"), a court must first determine whether the FSC is mandatory or permissive. *Weber v. PACT XPP Tech., AG*, 811 F.3d 758, 770–71 (5th Cir. 2016) (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384–86 (2d Cir. 2007)). Once a court makes this determination, it must then decide whether the FSC applies to the present case. *Id.* This involves two separate inquiries: (1) whether the contract is valid and the FSC is enforceable; and (2) whether the present case falls within the scope of the FSC. *See id.* at 770 ("Only after the court has interpreted the contract to determine whether it is mandatory or permissive does its enforceability come into play."); *see also*

*Mendoza v. Microsoft, Inc.*, 1 F. Supp. 3d 533, 542 (W.D. Tex. 2014) (citing *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 616 (5th Cir. 2007) (enforcing a forum-selection clause requires first assessing the clauses' contractual validity and its scope) (other citations omitted)).

The enforceability of an FSC is decided pursuant to federal law. *See Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997). Under federal law, FSCs are presumptively valid and should be enforced unless shown to be unreasonable under the circumstances. *Id.* at 963; *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) (enforcing FSC printed on a form passenger ticket); *M/S Bremen v. Zapata Off—Shore Co.*, 407 U.S. 1.

An FSC may be considered unreasonable if:

> (1) the incorporation of the FSC into the agreement was the product of fraud and overreaching;
>
> (2) the party seeking to escape enforcement "will for all practical purposes be deprived his day in court" because of the grave inconvenience or unfairness of the selected forum;
>
> (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or
>
> (4) enforcement of the FSC would contravene a strong public policy of the forum state.

*Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 301 (5th Cir. 2016) (internal citations omitted) (emphasis added). The burden of proving unreasonableness is a heavy one. *Plesha v. Ferguson*, 2009 U.S. Dist. LEXIS 132362, 2009 WL 8729579, at *2 (W.D. Tex. Aug. 19, 2009) (citing *Bremen*, 407 U.S. at 12–13, 15, 18). As the party opposing the FSC, FCX has the burden of showing that the clause should not be enforced. *See Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 63 (2013); *see also Jackson v. Payday Financial, LLC*, 764 F.3d 765, 776 (7th Cir. 2014); *Haynsworth*, 121 F.3d at 962–63.

5

**B.      Transfer Under § 1404(a)**

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Title 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. Courts evaluate these factors based on the situation that existed at

the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *See Burbank Int'l, Ltd. v. Gulf Consol. Int'l, Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977).

Yet "the existence of a mandatory, enforceable FSC dramatically alters this analysis." *Weber*, 811 F.3d at 767. First, the burden of proof is shifted. In the FSC context, a plaintiff has the burden of establishing that a § 1404(a) transfer is unwarranted, *see id.*; in a typical patent case, the movant bears that burden to prove that transfer is warranted, *see In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). Second, the court should not consider the private-interest factors since, once the parties contractually agree to a forum, they waive the right to challenge that forum as "inconvenient." *Weber*, 811 F.3d at 767. Rather, the court should consider only public-interest factors. *Id.* And because those factors rarely defeat a motion to transfer, FSCs will typically control, barring exceptional circumstances. *See id.* ("Cases in which the public-interest factors are sufficiently strong to outweigh a valid FSC will not be common."); *see also Barnett*, 831 F.3d at 308–09 ("[Public interest] factors justify a refusal to enforce a[n] [FSC] only in "truly exceptional cases.").

### C.    First-to-File Rule

In determining whether to transfer a civil action to another district, the Fifth Circuit utilizes the well-established first-to-file rule. *In re Spillman Dev. Group, Ltd.*, 710 F.3d 299, 307 (5th Cir. 2013). The first-to-file rule dictates that when related cases are pending before different federal courts, the court in which a case was most recently filed may refuse to hear the case before it if the issues in the cases substantially overlap. *Id.* (citing *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)). "Once the likelihood of substantial overlap between the two suits has been demonstrated, it is no longer up to the second-filed court to resolve the question of

whether both should be allowed to proceed." *Cadle*, 174 F.3d at 605. Instead, "the proper course

of action [is] for the [second-filed] court to transfer the case" to the first-filed court. *Id.* at 606.

"[T]he court in which an action is first filed is the appropriate court to determine whether

subsequently filed cases involving substantially similar issues should proceed." *Needbasedapps,*

*LLC v. Robbins Research Int'l, Inc.*, 926 F. Supp. 2d 907, 913 (W.D. Tex. 2013) (quoting *Save*

*Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)).

## III. ANALYSIS

The FSC at issue here provides:

> The Parties hereby consent to the exclusive jurisdiction and venue
> of a competent court sitting in the state of New York, for the
> adjudication of all matters arising from the subject matter of this
> agreement.

ECF No. 13-3 at Section 11.5. FCX bears the burden of showing that transfer to the SDNY, based

on the FSC, is unwarranted.

In deciding whether to transfer this case to the U.S. District Court for the Southern District

of New York, this Court must: (1) determine whether the FSC is mandatory of permissive; (2)

whether the FSC applies to the present case; and (3) whether the public interest factors defeat

FTC's Motion. The Court finds that the FSC here is mandatory—a conclusion neither party

disputes. *See, e.g.*, *Argyll Equities LLC v. Paolino*, 211 F. App'x 317, 319 (5th Cir. 2006); (finding

the language, "the exclusive jurisdiction of the courts sitting in Kendall County, Texas" was

mandatory); *Matheson Tri-Gas, Inc. v. FlexTM, Inc.*, No. 4:18-CV-0248, 2018 WL 2363958, at

*1, *5 (S.D. Tex. May 24, 2018) (finding forum selection clause mandatory where parties agreed

"to consent to the exclusive jurisdiction of the courts of the State of Texas with regard to any

dispute arising hereunder"). The parties' briefing is, instead, fixated on whether the FSC applies

to the present case.

A.      **The FSC Applies to this Case**

When deciding whether the FSC applies to the present case, the Court must make two separate inquiries: (1) whether the contract is valid and the FSC is enforceable; and (2) whether the present case falls within the scope of the FSC. *Weber*, 811 F.3d at 770. Here, the parties have not argued that the contract is invalid or that the FSC is unenforceable. To the contrary, FCX affirmatively relies on the FSC to support jurisdiction in the New Yok Action. The Court also finds, and parties do not dispute, that the FSC survived termination of the Licensing Agreement. The License Agreement contains a survival clause explicitly incorporating the FSC. ECF No. 13-3 at Section 10.5(d). And there is nothing else in the Licensing Agreement neutering the FSC. *See AGR Fin., LLC v. Ready Staffing, Inc.*, 99 F. Supp. 2d 399, 401 (S.D.N.Y. 2000) (concluding, based on the connection of plaintiff's claims to the underlying contract, that "even if the Agreement was terminated, its forum selection clause would still be effective"). The FSC is, therefore, still viable. *See Weingard v. Telepathy, Inc.*, No. 05-CV-2024, 2005 U.S. Dist. LEXIS 26952, 2005 WL 2990645, at *3 (S.D.N.Y. Nov. 7, 2005) (noting that "the forum selection clause is valid and still applicable" to disputes arising from a contract which "state[d] that the forum selection clause survives termination or expiration of the agreement").

Satisfied that the contract is valid and the FSC is enforceable, the Court will turn to the center of this dispute: the scope of the FSC.

1.      This Case Falls Within the Scope of the FSC

*Applicable Law.* "[T]o interpret the meaning and scope of a forum selection clause, a court must use the forum's choice-of-law rules to determine what substantive law governs." *Weber*, 811 F.3d at 770–71. Texas choice-of-law rules, therefore, apply. "Texas law gives effect to choice of law clauses regarding construction of a contract." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003) (citing *In re J.D. Edwards World Solutions Co.*, 87

S.W.3d 546, 549 (Tex. 2002)). Because the Licensing Agreement expressly provides that it should be "governed by the laws of the State of New York," ECF No. 13-3 at Section 11.5, the Court will apply New York law to interpret the scope of the forum selection clauses. *See Sabal Ltd. LP v. Deutsche Bank AG*, 209 F. Supp. 3d 907, 918 (W.D. Tex. 2016).

As this Court has previously noted:

> Fifth Circuit and New York law apply similar standards to determine whether the scope of a forum selection clause reaches the instant dispute. To determine whether the forum-selection clause applies to the type of claims asserted in the lawsuit, courts "look to the language of the parties' contract to determine which causes of action are governed by the forum selection clause . . . ." *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998). "If the substance of the plaintiff's claims, stripped of their labels, does not fall within the scope of the forum selection clause, the clause cannot apply." *Id.* In New York, "[t]he applicability of a forum selection clause does not depend on the nature of the underlying action." *Couvertier v. Concourse Rehabilitation and Nursing, Inc.*, 117 A.D.3d 772, 985 N.Y.S.2d 683, 684 (N.Y. App. Div. 2014). Instead, "it is the language of the forum selection clause itself that determines which claims fall within its scope." *Id.*

*Sabal*, 209 F. Supp. 3d at 923. Courts applying New York law to FSCs have remarked how "public policy favors enforcement of forum selection clauses and supports a broad reading of these clauses." *Triple Z Postal Servs., Inc. v. United Parcel Serv., Inc.*, 831 N.Y.S.2d 357, 357 (N.Y. Sup. Ct. 2006). "The New York trend is that broadly worded forum selection clauses encompass a wide variety of claims." *Sabal*, 209 F. Supp. 3d at 923. The Court, then, must consider the breadth of the FSC by interpreting the language used therein.

*Subject Matter*. The Court first considers what "subject matter" refers to in the phrase, "arising from the subject matter of this Agreement." ECF No. 13-3 at Section 11.5. Under New York law, the "subject matter" of a contract is not defined narrowly or cabined to one topic. This issue arises most often in the context of merger clauses (or the lack thereof). *See, e.g.*, *CreditSights, Inc. v. Ciasullo*, No. 05 CV 9345 (DAB), 2007 U.S. Dist. LEXIS 25850, at *18 (S.D.N.Y. Mar.

26, 2007) ("Generally, under New York law, 'a subsequent contract regarding the same subject matter supersedes the prior contract.'" (quoting *Independent Energy Corp. v. Trigen Energy Corp.*, 944 F. Supp. 1184, 1195–96 (S.D.N.Y. 1996))). For example, in *Pereira v. Cogan*, the Southern District of New York, applying New York law, stated that the subject matter of an agreement was severance benefits, and retirement benefits, and death benefits. 267 B.R. 500, 514–15 (S.D.N.Y. 2001).

The subject matter of the Licensing Agreement is the provision of a license on the '782 Patent to FTC, but also a termination right. As FTC notes, the License Agreement grants FTC a license on the '557 Application and its continuations, like the '782 Patent. *See* ECF No. 13 at 3. Naturally, the subject matter of a contract titled "Patent License Agreement" will be a patent license. *See Siddiqui v. Athene Holding Ltd.*, 806 F. App'x 50, 52 (2d Cir. 2020) (holding that the subject matter of a "Advisory Services Agreement" is "Services"). But the subject matter of the Licensing Agreement also encompasses the right to terminate the license to the '782 Patent, to which the Licensing Agreement dedicates an entire section. ECF No. 13-3 at Section 10. To hold that only the provision of a license is the subject matter of the License Agreement would exalt some provisions, like the license grant, over other equally impactful provisions, like the termination provision, without good reason.

*Arising From*. The Court next considers what "arising from" means in the phrase, "arising from the subject matter of this Agreement." ECF No. 13-3 at Section 11.5. To "arise" from means "to originate from a specific source" and is usually interpreted as "indicating a causal connection."[1]

---

[1] Though New York courts have consistently interpreted "arising from" to mean "originating from, incident to, or having connection with," *Worth Constr. Co., Inc. v. Admiral Ins. Co.*, 888 N.E.2d 1043, 1045 (N.Y. 2008) (quoting *Maroney v New York Cent. Mut. Fire Ins. Co.*, 839 N.E.2d 886, 805 (N.Y. 2005)), they predominantly only do so in the context of general insurance policies. *See Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 568 (2d Cir. 2011). Further, interpreting

*Coregis Ins. Co. v. Am. Health Found.*, 241 F.3d 123, 128 (2d Cir. 2001) (Sotomayor, J.); *HMS Holdings Corp. v. Moiseenko*, 29 N.Y.S.3d 847 (N.Y. Sup. Ct. 2015); *see also Hercules Inc. v. Hexcel Corp.*, 841 N.Y.S.2d 218, 218 (N.Y. Sup. Ct. 2007) ("[C]ommon usage of the word arise means to come into being, originate or spring up." (citing *Jones v R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004))); ECF No. 21 at 10 (citing *Phillips*, 494 F.3d at 389). This Action originates from and was caused by FTC's exercise of its termination rights—the subject matter of the License Agreement. FCX's statements confirm this. The FAC accuses FTC of infringing the '782 Patent and suggests that FCX filed this Action because the license of the '782 Patent "is no longer in effect." ECF No. 18 ¶ 4; *id.* ¶¶ 20–23 ("At the time of filing of this Amended Complaint, FTC is not licensed to practice the '782 Patent."); ECF No. 21 at 3 ("Plaintiff initiated this action six minutes after the License Agreement terminated . . . ."). Because this Action originates from exercise of the License Agreement's termination provision, this Action arises from the subject matter of the Licensing Agreement.

The FSC, thus, applies to this Action. *See also Columbia Aircraft*, 2020 U.S. Dist. LEXIS 184978, at *9 (holding that a "natural reading" of a FSC reciting "arising out of . . . the subject matter hereof" extended to "claims that arise from the parties' dealings and relationship as contemplated under their written agreement"). The trend that broadly worded FSCs "encompass a wide variety of claims" further supports this conclusion. *Sabal*, 209 F. Supp. 3d at 923.

---

the FSC thusly would also render the phrase "in connection with" in Section 8.1 of the Licensing Agreement superfluous. ECF No. 13-3 at Section 8.1 (reciting "arising out of or in connection with"); *see also Dantas v. Citibank, N.A.*, No. 17-Cv-1257 (SHS), 2018 U.S. Dist. LEXIS 101504, at *23 (S.D.N.Y. June 18, 2018) ("If 'arising out of' is interpreted so broadly that it becomes synonymous with those terms, then they do not add anything to the contract, and thus are rendered meaningless."). So the Court refuses to do so.

FCX's arguments to the contrary are not persuasive. FCX argues that "New York courts and courts applying New York law have consistently held that when a complaint alleging patent infringement" only seeks post-termination damages, "such claims are not governed by the forum selection clause within the license agreement." ECF No. 21 at 5. This statement ignores the dictates of New York law, which emphasize that applicability of an FSC is independent from the "nature of the underlying action." *Couvertier v. Concourse Rehabilitation and Nursing, Inc.*, 117 A.D.3d 772, 985 N.Y.S.2d 683, 684 (N.Y. App. Div. 2014). FCX's fixation on the nature of this action as one for post-termination infringement is misplaced. The inquiry must focus on the "language of the forum selection clause itself." *Id.*

FCX's argument falters in relying on caselaw not addressing the specific language of the FSC: "all matters arising from *the subject matter* of this agreement." ECF No. 13-3 at Section 11.5 (emphasis added). FTC correctly notes that "All of the cases cited by FCX stand for the unremarkable proposition that a forum selection clause expressly limited to claims 'arising under' a contract applies only to claims based on rights in that contract."[2] ECF No. 23 at 1. In each of those cases, the FSC-at-issue covered matters "arising from" a relevant agreement (or an immaterial alternative of that); the FSC here covers matters "arising from *the subject matter of*" the relevant agreement. Several courts have confirmed that provisions including such "subject matter" phrases are broader than those without. *See, e.g.*, *Columbia Aircraft Sales, Inc. v. Piper Aircraft, Inc.*, No. 3:20-cv-00701 (JAM), 2020 U.S. Dist. LEXIS 184978, at *9 (D. Conn. Oct. 6, 2020) (collecting cases). And, tellingly, FCX presents no cases in which a court narrowly interpreted an FSC reciting a "subject matter" phrase.

---

[2] FTC also correctly notes that though FCX asserts that New York law controls this inquiry, ECF No. 21 at 5, the cases upon which FCX relies do not invoke New York law. ECF No. 23 at 2.

The Court will not hold that an FSC capturing any matter "arising from an agreement" and an FSC capturing any matter "arising from the subject matter of an agreement" are of equal scope. The phrase "subject matter of" must be accorded some effect. *See, e.g.*, *Suffolk Cty. Water Auth. v Vill. of Greenport*, 800 N.Y.S.2d 767, 768 (N.Y. Sup. Ct. 2005) ("[A]n interpretation which renders language in the contract superfluous is unsupportable."). FTC suggests that the phrase expands the scope of the FSC. ECF No. 23 at 3 ("[A] forum-selection clause that extends to any claim 'arising from the subject matter' of the parties' agreement is at least as broad as one that extends to any claim 'relating to' that parties' agreement." (quoting *Columbia Aircraft*, 2020 U.S. Dist. LEXIS 184978, at *9)). FCX offers no explanation for how the "subject matter" phrase affects the scope of the FSC, but simply argues that this action falls outside the scope of the FSC. As noted above, the Court holds that the scope of the FSC encompasses this action because there is a causal connection between it and the subject matter of the Licensing Agreement, termination of the license.

Finally, FCX argues that the FSC does not apply here because FTC contends that "the License Agreement *never* applied to its products," ECF No. 21 at 9, and thus this Action does not arise from the subject matter of the License Agreement. This Court denies this argument as specious. The inquiry into whether an FSC applies focuses on the claims in the complaint, not the accused infringer's affirmative defense(s). And the current underlying the claims here (and the claims in the New York Action), as is evident from the FAC's allegations, is that the accused products here would have been covered by the License Agreement were it not terminated.

## 2. The FSC Waived Venue for Patent Infringement Actions

FCX argues that transfer must fail because the SDNY is not a proper venue for this case under 28 U.S.C. § 1400(b). ECF No. 21 at 12. According to FCX, had "FTC intended for the [FSC] to waive venue for patent infringement *per se*, FTC could have said so in the agreement." *Id.* (citing

*Nissei ASB Co. v. R&D Tool & Eng. Co.*, 2018 WL 9961069, at *3 (N.D. Ga. Nov. 9, 2018) (holding that forum selection clause providing for jurisdiction in Atlanta did not render venue proper under Section 1400(b) because, after *TC Heartland*, consent to jurisdiction does not operate as consent to venue).

FTC distinguishes *Nissei*, suggesting that opinion only applied to FSCs with non-exclusive consent to jurisdiction and the FSC here has exclusive consent to jurisdiction in New York. FTC cites *Sundesa, LLC v. IQ Formulations, LLC*, in which the U.S. District Court for the Central District of California held that "a forum selection clause can operate as a waiver of § 1400(b)." 2020 WL 8125541, at *2 (C.D. Cal. Aug. 19, 2020). FTC further implies that FCX alleged in the New York Action that FTC resides in the Southern District of New York, meaning venue would be satisfied under § 1400(b).

The Court finds FTC's first argument, and the reasoning in *Sundesa*, persuasive. FCX executed a patent license agreement identifying the SDNY as the exclusive jurisdiction for any matters arising from the agreement's "subject matter"; neither party can now argue that in drafting the FSC, they did not waive objections to venue in the SDNY for claims captured in the FSC, like the *patent infringement* claims here that arose from the subject matter of a *patent license* agreement. The Court, however, rejects FTC's meritless argument that venue would otherwise be proper in the SDNY merely because FCX alleged in the New York Action that FTC "resides" in New York for purposes of 28 U.S.C. § 1391(b)(1). As *TC Heartland* made clear, residence under 28 U.S.C. § 1391(b)(1) has a different scope then residence under 28 U.S.C. § 1400(b).

### B.     The Public Interests Factors Do Not Defeat Transfer

Having determined that the FSC applies to this Action, the Court turns to whether the public interest factors under § 1404 defeat FTC's Motion.

1.  <u>Administrative Difficulties Flow from Court Congestion</u>

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009); *In re Apple Inc.*, 979 F.3d 1332, 1343 (Fed. Cir. 2020). A faster average time to trial means more efficient and economical resolutions of the claims at issue. That said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. Moreover, when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

Federal Circuit jurisprudence has muddled what facts are relevant to this factor. One recent opinion held that a difference in the number of pending cases between the transferor and transferee forums is "too tenuously related to any differences in speed by which these districts can bring cases to trial." *Id*. Yet in a more recent opinion the Federal Circuit has stated that a "proper" analysis "looks to the number of cases per judgeship and the actual average time to trial." *In re Juniper Networks, Inc.*, No. 2021-156, 2021 U.S. App. LEXIS 29812, at *8 (Fed. Cir. Oct. 4, 2021). The Federal Circuit has not squared why cases per judgeship matter if, according to *Genentech*, time to trial is dispositive of this factor.

The Court finds that this factor weighs against transfer because, as FCX notes, the "SDNY takes a median time of 30.6 months to bring cases to trial compared to 19.1 months in this District." ECF No. 21 at 12.

2.  <u>Local Interests of Each District</u>

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung Elecs. Co.*, Nos. 2021-139, 2021-140, 2021 U.S. App. LEXIS 19522, at *20 (Fed.

Cir. June 30, 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 2021 U.S. App. LEXIS 29036, at *14 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)).

The Court finds that this factor weighs slightly against transfer. FTC does not deny that it is a "large, public company headquartered" in this district. *See* ECF No. 21 at 1, 13. The Court credits the accused infringer's "general presence" here, but this factor cannot heavily favor maintaining this Action here without a showing that events giving rise to it, such as the design, development, and testing of the accused product, occurred in or near this venue. *See In re Apple*, 979 F.3d at 1344.

### 3.   Familiarity with Federal Patent Law

A third public interest factor regards the familiarity of the forum with the law that will govern the case. This Court and the SDNY are both familiar with federal patent law, and equally

capable of presiding over a patent law case. The Court finds that this factor is neutral or only slightly favors maintaining this Action here because of this Court's expertise in patent law.

### 4. Conflicts or Foreign Law

The parties do not dispute that this final factor is neutral and the Court agrees.

\*   \*   \*

Docket congestion favors denying transfer—but the Federal Circuit has diminished the significance of this factor. Local interests slightly favor denying transfer. This Court's familiarity with patent law is neutral or only slightly favors denying transfer. The conflicts-of-law factor is neutral. Considering these factors together, the Court is not persuaded that FCX has shown transfer to the SDNY is unwarranted in view of the parties' consent to the exclusive jurisdiction of the SDNY to litigate this Action.

### C.   The First-Filed Rule

For the sake of completeness, the Court will also consider the FTC's argument that the first-to-file rule is another, independent grounds supporting transfer to the SDNY. ECF No. 13 at 10. The Fifth Circuit has endorsed the "first-to-file" rule, under which district courts are empowered to "maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case *pending* in another court." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999) (emphasis in original). Yet "[t]he Supreme Court has long recognized that § 1404(a) modified common-law principles involving transfer between federal forums." *In re SK hynix Inc.*, 847 F. App'x 847, 853 (Fed. Cir. 2021). Under § 1404(a), the threshold question is "whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). And it is unclear whether

"there is a legal right under the first-to-file rule to compel a transfer between federal forums when § 1404(a)'s threshold conditions are not met." *In re SK hynix Inc.*, 847 F. App'x at 853.

The Court will not hold that transfer to the SDNY is appropriate under the first-to-file rule where FTC has not shown that FCX might have brought this Action in the SDNY. The first-to-file rule exists to support "comity and sound judicial administration" among federal courts. *Save Power Ltd.*, 121 F.3d at 950. If this Court transfers this Action to the SDNY under the first-to-file rule without consideration of the transferee's court's jurisdiction and venue, only for the SDNY to dismiss this Action on such grounds, FCX would have to re-file its case in this district. While transfer in such a scenario may serve comity in some more-than-negligible amount, the resultant inefficiency is too stark to favor application of the first-to-file rule ignorant of § 1404's threshold questions. These questions are quite significant here where the venue statute that controls this Action is different than that controlling the New York Action.

FTC has not shown that, absent the FSC, the SDNY is a proper venue for this Action under 28 U.S.C. § 1400(b). The only claims asserted in this case are claims brought under 35 U.S.C. § 271. Section 1400(b) controls the venue inquiry for such claims. And, according to the Court in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, venue for patent infringement actions is only proper either: (1) in a court in a state in which the accused infringer is incorporated; or (2) in a court in a district where the accused infringer maintains a "regular and established place of business." 137 S. Ct. 1514, 1519, 1521 (2017). FTC is incorporated in Delaware—not New York. *See* ECF No. 18 ¶ 7. And FTC has not shown that it has a regular and established place of business in the SDNY. Ignoring the FSC, FTC's consent to the SDNY as a proper venue only after this Action was filed here is insufficient to support transfer. *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). Accordingly, the first-to-file rule is an insufficient basis to support transfer in this case.

*See also Netlist, Inc. v. SK Hynix Am. Inc.*, No. 6:20-CV-00194-ADA, 2021 U.S. Dist. LEXIS 47242, at *8 n.2 (W.D. Tex. Feb. 2, 2021).

## IV. CONCLUSION

It is therefore **ORDERED** that is Defendant FTC Solar, Inc.'s Motion to Transfer is **GRANTED**. It is further **ORDERED AND ADJUDGED** that: (1) the Clerk of the Court shall transfer this case to the United States District Court for the Southern District of New York for all further proceedings; and (2) after transfer, the Clerk shall close the case.

SIGNED this 25th day of October, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE